NEW YORK RAILWAYS COMPANY, Appellant, *v.* THE CITY OF NEW YORK et al., Respondents.

Tax — deductions under section 48 of the Tax Law to prevent inequality of taxation on special franchises — when such deductions properly disallowed.

1. The purpose of the legislature in allowing deductions under section 46 (now section 48) of the Tax Law (Cons. Laws, ch. 60) on the payment of the tax on special franchises was to prevent inequality in taxation as between street railway corporations which were required to make such payments, embracing the corporations which have received grants of late years, and those corporations which were not required to make such payments and embracing most of the older corporations, and it should not be construed as retroactive.

2. The first tax on a special franchise in the city of New York pursuant to the Special Franchise Act became due and payable on the first Monday of October, 1900, which in that year was the first day

of the month.   The plaintiff paid during the year preceding October 1, 1900, amounts computed on its gross earnings for the year ending September 30, 1899.   *Held*, that the contention that such amounts should have been deducted from the special franchise tax due and payable on the 1st of October, 1900, by reason of the provisions of section 46, cannot be sustained.

*New York Railways Co. v. City of New York*, 164 App. Div. 871, affirmed.

(Argued April 25, 1916;   decided July 11, 1916.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 23, 1914, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term in an action in equity to remove a cloud upon title.

The facts, so far as material, are stated in the opinion.

*Ralph Norton, Henry J. Smith, Louis S. Carpenter* and *J. L. Quackenbush* for appellant.   The franchise payments in question are legally deductible from the 1900 special franchise taxes.   (*Heerwagen* v. *C. S. R. R. Co.*, 90 App. Div. 275; 179 N. Y. 99; *People ex rel. T. A. R. R. Co.* v. *Tax Comrs.*, 157 App. Div. 731; 212 N. Y. 472; *City of Ithaca* v. *Ithaca St. Ry.*, 145 App. Div. 675; *Metropolitan St. Ry.* v. *New York*, 199 U. S. 1; *Woollcott* v. *Shubert*, 217 N. Y. 212; *People ex rel. Manhattan Ry. Co.* v. *Austen*, 132 App. Div. 890; 197 N. Y. 581; *Matter of New York City Interborough Ry. Co.* v. *Moynahan*, 148 App. Div. 908; 206 N. Y. 652; *People ex rel. I. R. T. Co.* v. *O'Donnell*, 202 N. Y. 313; *People ex rel. Mutual Trust Co.* v. *Miller*, 177 N. Y. 51; *Matter of Harbeck*, 161 N. Y. 21.)   The city and its agents are estopped from taking any action which would have the effect of denying the legality of the credits made against the 1900 special franchise taxes in November, 1909, upon the faith of which third parties have changed their position.   (*Curnen* v. *Mayor*, 79 N. Y. 511; *O'Leary* v.

*Board of Education,* 93 N. Y. 1; *City of N. Y. v. Halsey,* 132 App. Div. 192; *Rankin* v. *City of N. Y.,* 145 App. Div. 838; 204 N. Y. 684; Dillon on Mun. Corp. § 435.)

*Lamar Hardy, Corporation Counsel (Addison B. Scoville* and *William H. King* of counsel), for respondents. The percentages of gross receipts and stipulated sum paid to the city on December 30, 1899, and February 19, 1900, and credited by the comptroller on November 22, 1909, against the 1900 special franchise taxes of the companies in question were not legally deductible from those special franchise taxes. (*People ex rel. Met. St. Ry. Co.* v. *Tax Comrs.,* 199 U. S. 1; *Roosevelt Hospital* v. *Mayor, etc.,* 84 N. Y. 108; *People ex rel. Westchester F. I. Co.* v. *Davenport,* 91 N. Y. 574; *People ex rel. Y. M. C. A.* v. *Sayles,* 32 App. Div. 197; 157 N. Y. 677; *People ex rel. Twenty-third Street Co.* v. *Commissioners,* 95 N. Y. 554; *Bell* v. *Mayor, etc.,* 105 N. Y. 139; *Delafield* v. *Brady,* 108 N. Y. 524; *People ex rel. Cohen* v. *Butler,* 125 App. Div. 384; *Tenement House Dept.* v. *Moeschen,* 179 N. Y. 325.) The defendants were not estopped from correcting the illegal entries in the records of the collector of assessments and arrears. (*Ryan* v. *Franklin,* 199 N. Y. 347; *Maloney* v. *Horan,* 49 N. Y. 111; *Winegar* v. *Fowler,* 82 N. Y. 315.)

CHASE, J. An act to tax special franchises passed the legislature at the regular session in 1899. It was not approved by the governor. An extraordinary session of the legislature was called. In his message to the legislature in extraordinary session (Public Papers of Governor Roosevelt, 1899, page 102), dated May 22, 1899, Governor Roosevelt said:

" The bill before me fails to take account of the fact that, in a very unequal and irregular way, many corporations do already pay a certain, though usually an utterly inadequate, sum in taxes. Some pay nothing at

all to the local municipalities; but others pay sums varying from one to five per cent on their gross earnings. The amounts have been determined in the most haphazard manner and bear no proportion whatever to the value of the franchises or to their earning capacity. It is obviously unjust, when introducing a system under which we believe that these franchises will for the first time be fully and fairly taxed according to their respective values, not to allow for this existing and inequitable taxation. Accordingly it should be provided that from the sum assessed by the State authorities as the tax which a corporation must pay because of its local franchise, there shall be deducted the amount already annually paid by it to the locality for such franchise. In no other way is it possible to tax these corporations with uniformity and equity. It is contended by the advocates of the bill that in reaching the value of the franchise under the new law the amount thus paid away in taxes must be allowed for and deducted anyhow; but it is not certain that this would be done, and in any event the principle should be definitely established in the law itself. * * * I recommend the enactment of a law which shall tax all these franchises as realty which shall provide for the assessment of the tax by the Board of State Tax Commissioners and which shall further provide that from the tax thus levied for the benefit of each locality there shall be deducted the tax now paid by the corporation in question to the locality. * * * I suggest that the operation of the law be deferred until October first of this year."

At the extraordinary session of the legislature, chapter 712 of the Laws of 1899 was passed which became a law and took effect October 1st, 1899. It is provided therein by section 46, now section 48, of the Tax Law as follows: " If, when the tax assessed on any special franchise is due and payable under the provisions of law applicable to the city, town or village in which the tangible prop-

erty is located, it shall appear that the person, copartnership, association or corporation affected has paid to such city, town or village for its exclusive use within the next preceding year, under any agreement therefor, or under any statute requiring the same, any sum based upon a percentage of gross earnings, or any other income, or any license fee, or any sum of money on account of such special franchise, granted to or possessed by such person, copartnership, association, or corporation, which payment was in the nature of a tax, all amounts so paid for the exclusive use of such city, town or village except money paid or expended for paving or repairing of pavement of any street, highway or public place, shall be deducted from any tax based on the assessment made by the state board of tax commissioners for city, town or village purposes, but not otherwise; and the remainder shall be the tax on such special franchise payable for city, town or village purposes. The chamberlain or treasurer of a city, the treasurer of a village, the supervisor of a town, or other officer to whom any sum is paid for which a person, copartnership, association or corporation is entitled to credit as provided in this section, shall, not less than five nor more than twenty days before a tax on a special franchise is payable, make and deliver to the collector or receiver of taxes or other officer authorized to receive taxes for such city, town or village, his certificate showing the several amounts which have been paid during the year ending on the day of the date of the certificate. On the receipt of such certificate the collector, receiver or other officer shall immediately credit on the tax roll to the person, copartnership, association or corporation affected the amount stated in such certificate, on any tax levied against such person, copartnership, association or corporation on an assessment of a special franchise for city, town or village purposes only, but no credit shall be given on account of such payment or certificate in any other year, nor for a greater sum than the

amount of the special franchise tax for city, town or village purposes, for the current year; and he shall collect and receive the balance, if any, of such tax as required by law."

The plaintiff is now the owner of special franchises previously owned by several corporations. No question arises on this appeal relating to such ownership and the plaintiff and its predecessors in title are referred to generally herein as the plaintiff.

As we understand, no question arises on this appeal relating to payments made by the plaintiff for license fees or income on account of a special franchise other than payments made by it upon a percentage computed upon its gross earnings for the year ending October 30, 1899.

It is provided by the Railroad Law [Cons. Laws, ch. 49] (section 175, formerly section 95, chapter 565, Laws of 1890): "Every corporation building or operating a railroad or branch or extension thereof, under the provisions of this article [Article 5 relating to street surface railroads], or of chapter two hundred and fifty-two of the laws of eighteen hundred and eighty-four, within any city of the state having a population of twelve hundred thousand or more, shall, for and during the first five years after the commencement of the operation of any portion of its railroad annually, on November first, pay into the treasury of the city in which its road is located, to the credit of the sinking fund thereof, three per centum of its gross receipts *for and during the year ending September thirtieth next preceding;* and after the expiration of such five years, make a like annual payment into the treasury of the city to the credit of the same fund, of five per centum of its gross receipts  *  *  *  The president and treasurer of any corporation required by the provisions of this article to make a payment annually upon its gross receipts shall, on or before November first in each year, make a verified report to the comptroller or chief fiscal officer of the city of the gross amount of its

receipts for the year ending September thirtieth, next preceding, * * *."

The first tax on a special franchise in the city of New York pursuant to the special franchise act became due and payable on the first Monday of October, 1900, which in that year was the first day of the month.

The plaintiff paid during the year preceding October 1, 1900, amounts computed on its gross earnings for the year ending September 30, 1899. The important question for our consideration is whether such amounts should have been deducted from the special franchise tax so due and payable on the first day of October, 1900.

Section 46 of the special franchise act was not intended to release corporations from existing obligations nor to give them credit for amounts which the statute then provided should be paid on gross earnings for a period of time ending before the special franchise act took effect. It was intended to prevent duplication and to avoid inequity and injustice in taxation. The period of time for which the plaintiff was required to pay a tax on its gross earnings, which tax is the basis of the present controversy, expired before the special franchise act took effect. The importance of that fact is not changed nor overcome by the further fact that the tax computed on such earnings was not made payable until a later date (November 1, 1899). By said section 46 it was intended that corporations which were by some other statute required to pay taxes in the nature of a special franchise tax for the same period of time provided by the special franchise act should be given credit therefor upon the tax so imposed by that act and thus prevent a duplication of special franchise taxes.

This provision of the statute was necessary if corporations were to be treated with uniformity and equity, because, as said by the governor in his message, the tax under the special franchise act would be upon the full value of the special franchise. Franchise taxes relating

to or affecting entirely different periods of time do not overlap and cannot constitute a duplication. It is only when they relate to and affect the same period of time that they can be unjust as between the corporations taxed. It was such an injustice that the legislature at the governor's suggestion sought to overcome.

It is urged that the construction of the appellant is in accord with the literal language of the act. The purpose of the statute in the use of the words "Has paid * * * within the next preceding year" was to prevent a credit on a special franchise tax under the act, unless the other tax which amounted to a duplication *had actually been paid.* The necessity for such a provision is obvious.

A strict and severe construction of the statute so far as it relates to other payments in the nature of a tax is not contended for by any one. No one apparently assumes that a corporation should be allowed a credit upon a special franchise tax due and payable October 1, 1900, for payments made within the next preceding year in the nature of a franchise tax which by neglect or otherwise had remained due and unpaid from a period of time prior to September 30, 1898. Such an allowance or credit would concededly be a gratuity.

An act must be construed in view of all of its provisions and also in view of the purposes and intent of the legislature in its enactment. The appellant's contention would, in our judgment, in effect permit it to escape entirely from the payment of a franchise tax on gross earnings for a period prior to October 1, 1899. Such contention would not carry out the purposes of the act. It would give the appellant corporation credit for a tax not only based upon gross earnings for a term before the act took effect, but for a tax that has no relation whatever to the period of time for which the special franchise tax was laid.

The position of the respondent will appear more clearly if the payment in the nature of a franchise tax is treated

as rent.  If the appellant was charged with a franchise tax as rent for the year ending October 1, 1900, but was entitled to credit for other rents paid for the purposes of the same franchise during the year next preceding Octo-ber 1st, 1900, we assume no one would contend that rent though paid within such year but for a period of time ending September 30, 1899, would be allowed as a credit. Such, however, is substantially the appellant's conten-tion on this appeal.

Are not franchise taxes in the nature of rent charges? (*Heerwagen* v. *Crosstown St. R'way Co.*, 179 N. Y. 99, 103.)  What was the purpose of section 46 of the special franchise act but to prevent duplication of rent charges?

Justice BREWER in *New York ex rel. Met. St. R. Co.* v. *State Board of Tax Comrs.* (199 U. S. 1, 45), refer-ring to franchise taxes, says: " These annual charges are not called taxes, but are spoken of as in the nature of a tax, and the legislature recognizing the equitable force of the claim based thereon provided that the corporation be given credit for sums thus payable.  In this connec-tion it is well to recall that in section 1 of the act of 1886 (Chapter 642 of the Laws of 1886) *supra*, these annual charges are called ' rental or percentage of gross earnings.' "

The lack of uniformity that would result in carrying out the appellant's contention is also shown in the fact that all street surface railroad corporations are not required by section 175 of the Railroad Law to pay a tax on their gross earnings.  All street railroad corporations are required by the special franchise act to pay a tax on their special franchises.  If some of the street surface railroad corporations in the city of New York are allowed credit on their special franchise taxes under the act, for taxes paid on their gross earnings for a period of time wholly before the act took effect, it is a discrimination in favor of the corporations which are allowed such credits.

The purpose of the legislature in allowing such deductions on the payment of the tax was to prevent inequality in taxation as between street railway corporations which were required to make such payments embracing the corporations which have received grants of late years and those corporations which were not required to make such payments, embracing most of the older corporations. (*People ex rel. Third Ave. R. R. Co.* v. *State Bd. Tax Comm.*, 157 App. Div. 731, 752; affd., 212 N. Y. 472.)

In view of the purpose of the act it is clear that in considering deductions to be made by reason of other payments in the nature of a franchise tax it should not be construed as retroactive. (*People ex rel. Provident S. L. A. Society* v. *Miller*, 179 N. Y. 227, 230.)

The appellant has called to our attention the decisions in *Matter of Manhattan R'way Co.* v. *Austen* (133 App. Div. 890; affd., 197 N. Y. 581) and *Matter of N. Y. City Interboro R'way Co.* v. *Moynahan* (148 App. Div. 908; affd., 206 N. Y. 652), in the first of which cases it appears that a credit was allowed on a special franchise tax due the first Monday in October, 1909, for amounts paid in the nature of a tax during the year preceding said first Monday in October, although such payments were computed upon gross earnings of said corporation prior to such preceding year and that in the latter of said cases the court allowed on a special franchise tax due the first Monday in October, 1908, payments made in the nature of a tax in the year preceding such first Monday in October, although such taxes were based in part on gross earnings prior to such preceding year.

There is no inequity as between corporations if credits are allowed for all payments made in a preceding year for amounts paid in the nature of a tax so long as they do not include a credit for payments on account of gross earnings for a period of time prior to the act taking effect. The decisions mentioned are not controlling in favor of the appellant in this case.

The question considered in *Heerwagen* v. *Crosstown St. R'way Co.* (90 App. Div. 275; modified and affirmed, 179 N. Y. 99) was, whether payments made as a percentage on gross earnings constitute payments "in the nature of a tax," and whether the amount thereof should be deducted from a special franchise tax assessed by the state board of tax commissioners. The question before the court in the case under consideration does not seem to have been considered in that case, neither does the question now before us seem to have been considered in the *Manhattan Railway Company Case* (*supra*), or in the *New York City Interborough Railway Company Case* (*supra*).

The credit claimed by the appellant would, if intended by the legislature, be arbitrary and not based upon any apparent reason or purpose and it would amount to a gratuity. Such a credit was not intended by the legislature nor is it required by any reasonable construction of the act.

It does not seem necessary to discuss the other questions urged upon us in this case. There was no authority vested in the comptroller of the city to credit the plaintiff with taxes paid upon gross earnings for a period preceding the day when the special franchise act took effect. The respondents are not estopped by reason of anything appearing in the record from asserting in this action in equity that the comptroller was without authority to credit the plaintiff with such tax.

The judgment should be affirmed, with costs.

HOGAN, CARDOZO and SEABURY, JJ., concur; HISCOCK and COLLIN, JJ., dissent; WILLARD BARTLETT, Ch. J., not voting.

Judgment affirmed.