CITY OF TROY, Plaintiff, *v.* CITY SCHOOL DISTRICT OF THE CITY OF TROY, NEW YORK, Defendant.

Third Department, July 7, 1966.

*Wilford A. Le Forestier, Corporation Counsel,* for plaintiff.
*George S. Lettko* for defendant.

TAYLOR, J. The parties submit this controversy upon an agreed statement of facts pursuant to CPLR 3222.

Plaintiff is a domestic municipal corporation and defendant is an educational district corporation organized and existing under article 51 of the Education Law and is located entirely within the confines of plaintiff city. The school district pursuant to section 1302 of the Real Property Tax Law each year duly adopts the then current assessment roll of the city as and for its assessment roll upon the basis of which, in accordance with its annual budget, it duly levies school taxes upon the respective parcels of real estate so assessed by the city and situate in said school district. On or about February 15 of each year pursuant to section 1332 of the Real Property Tax Law the school district duly delivers to the plaintiff's city tax-enforcement officer an itemized statement containing a description of the real property upon which such school taxes remain unpaid and a corresponding list of those owners shown on said assessment roll who have been to that date delinquent in the payment of their taxes as levied by the school district. Commencing on or about April 1 of each year the city makes inter-

mittent payments to the school district on account of the delinquencies and completes full payment thereof by February 15 of the following year.  Pursuant to section 1332 of the Real Property Tax Law the city tax-enforcement officer follows the procedure of adding 5% of the unpaid school tax (principal and interest) to such unpaid school tax for each parcel of real property described in the aforesaid itemized statement received from the school district and proceeds to enforce collection of such unpaid school taxes as were levied upon real property within the boundaries of the city in the same manner and at the same time as though such unpaid school taxes were city taxes, and upon collection of any such school taxes retains and pays over to the city such 5% as provided by law.  For some prior years several delinquent taxpayers have paid to the city the full amount of the combined city and school taxes then due and owing based upon the said assessment roll plus interest and penalties accrued thereon, including said 5% addition. Thereafter these taxpayers in certiorari proceedings to review their respective assessments have obtained reductions thereof by final orders of the Supreme Court and have become entitled to a consequent refund *pro tanto* of the amount of the combined city and school taxes paid to the city tax-enforcement officer and have made timely applications to the city and not to the school district for refunds which the orders directed, including the proportionate amount of the school tax collected by the city or theretofore paid in full to the school district by the city pursuant to section 1332 of the Real Property Tax Law. Pursuant to such reduction orders the city has paid to such taxpayers the *pro tanto* refunds as directed, including the proportionate amount of the school tax collected by the city, the full amount of which it had theretofore paid to the school district.  In each such instance the city has made claim against the school district for payment and reimbursement of that portion of the taxpayer's refund which represented the excess school tax resulting from the final adjudication reducing the assessment.

In other circumstances encompassed by the statement of facts the delinquent taxpayers did not pay their city and school taxes until they had obtained final orders reducing their assessments in which event these delinquent taxpayers were required to pay only the reduced city and school taxes based on the corrected assessments and the city thus collected only a proportionate share of the school tax which it had theretofore paid in full to the school district based upon the original and unreduced assess-

ment. The city asserts that the school district should refund to it, as the school district's proportionate share, the difference between the original amount paid over to the school district and the amount actually received by the city from the taxpayer less the added 5%.

Upon the foregoing facts the controversial question presented is whether the school district must bear its *pro tanto* share of court ordered refunds. The city contends that as " the other person paying such tax " it is entitled to apply to the school district for appropriate reimbursement under subdivision 5 of section 1316 of the Real Property Tax Law and also takes the general position that the ultimate responsibility for refunds of erroneously collected taxes should fall upon the political subdivision for whose benefit the tax was collected. The school district argues that the city does not qualify as a person entitled to claim a refund under subdivision 5 of section 1316 and that the statutory words " the petitioner or other person paying such tax " should be read " the actual taxpayer, other than a municipality " and that since the taxes were imposed " for other than city, town, village or special district purposes " responsibility for refunds directed in tax certiorari proceedings should be deemed a general city or county charge under paragraph (b) of subdivision 1 of section 726 of the Real Property Tax Law.

We think that the position of the city is sound. Article 13 of the Real Property Tax Law, derived mainly from the former Education Law, is titled " Special Provisions Relating to School Districts." Section 1316 thereof deals *inter alia* with " refunds " and " proceeding to review an assessment of real property." Subdivision 5 of the section provides, in part, that " Any final order " in a proceeding to review a tax assessment " appearing on that portion of a city * * * assessment roll applicable to a school district, shall be binding on such school district " and that " Any amount of taxes of such school district at any time collected upon such assessment in excess of the amount which would have been paid had such assessment been made as determined by such order, shall be refunded by the school authorities of such school district, together with interest thereon " upon timely application " by the petitioner or other person paying such tax ". The clear mandate of the statute places the refunding burden on the school district whether the taxpayer has paid his tax directly to it — which the parties do not dispute — or whether, as here, the moneys were received from the city tax-enforcement officer pursuant to section 1332 of the Real Property Tax Law. Such is true irrespective of

the point in time at which the refund is directed. Moreover, this construction conforms to a statutory scheme applying the principle of imposing ultimate responsibility for refunds upon the political subdivision for whose benefit the tax was collected. (*Matter of Seneca Hotel* v. *Board of Supervisors*, 19 A D 2d 183.) It seems unlikely that the Legislature did not intend to include the city which paid the tax in the first instance as an appropriate statutory recipient of the refund. Defendant's reliance upon the charge-back provisions of paragraph (b) of subdivision 1 of section 726 of the Real Property Tax Law is misplaced. The section on its face has no application to school tax refunds which are dealt with exclusively in section 1316 of the Real Property Tax Law.

It follows that judgment should be directed in favor of the plaintiff against the defendant.

GIBSON, P. J., HERLIHY, REYNOLDS and AULISI, JJ., concur.

Judgment directed in favor of plaintiff against defendant, without costs and without interest. Settle order.