TELEPROMPTER CORPORATION, Appellant-Respondent, v
CITY OF NEW YORK et al., Respondents-Appellants.

First Department, July 16, 1981

APPEARANCES OF COUNSEL

*Sheldon D. Camhy* of counsel *(Ronald D. Lefton* and *Laurie A. Asch* with him on the brief; *Shea & Gould,* attorneys), for appellant-respondent.

*Morris Einhorn* of counsel *(Leonard Koerner* with him on the brief; *Allen G. Schwartz, Corporation Counsel,* attorneys), for respondents-appellants.

OPINION OF THE COURT

SANDLER, J.

On July 28, 1970, the Board of Estimate granted Teleprompter Corporation and its subsidiary Teleprompter Manhattan CATV Corp. (hereinafter Teleprompter) a 20-year "franchise and right to install, operate and maintain" a community antenna television system (CATV) in two districts in upper Manhattan subject to the terms and conditions in an accompanying franchise contract. The contract provided, *inter alia,* for compensation to the City of New York at 5% "of its [Teleprompter's] Gross Receipts from provision of Basic Service to Residential Subscribers," 10% of all other gross receipts, plus a percentage of gross receipts "When and if Pay Television is authorized". In section 7(h) the parties agreed: "Payments of compensation made by the Company to the City pursuant to the provisions of this contract shall not be considered in the nature of a tax, but shall be in addition to any and all taxes which are now or hereafter required to be paid by any law of the State of New York, the City, or the United States."

In a letter dated September 1, 1976, Teleprompter notified the Comptroller of its intention to bring suit for refund of $794,086.40, alleging that it was entitled under section 626 of the Real Property Tax Law to credit against the special franchise tax for payments made to the city under the agreement. On March 30, 1977, Teleprompter commenced an action for the alleged overpayment, and for judgment declaring that plaintiff was entitled to the above-indicated credit and directing payment of all amounts paid in past years by reason of the denial of the credit.

The city moved for dismissal on the ground that in section 7(h) of the agreement, plaintiff had waived any credit

for franchise payments under section 626 of the Real Property Tax Law. The city's motion to dismiss for legal insufficiency was denied, and the action converted into a CPLR article 78 proceeding, Special Term finding that mandamus was the appropriate remedy for the relief requested. Thereafter Teleprompter and the city both moved for summary judgment.

Special Term (100 Misc 2d 998) denied the city's motion for summary judgment, holding that the agreement with regard to compensation set forth in section 7(h), a standard clause in city franchise contracts for over 50 years, violated the public policy of the State set forth in section 626 of the Real Property Tax Law. However, the court directed the city to credit Teleprompter only with contractual payments made during 1978 because Teleprompter had not made timely claims for credit each year (Real Property Tax Law, § 626, subd 2) and had not sought review of the Comptroller's failure to give credit within the four-month statutory period provided in CPLR 217.

■ We disagree with Special Term's conclusion that the issues presented were not appropriately addressed in a declaratory judgment action and accordingly reconvert the action to one for declaratory judgment. In *Dun & Bradstreet v City of New York* (276 NY 198, 206) the Court of Appeals held: "The undisputed facts in this case make it peculiarly one where the remedy of a declaratory judgment should be granted. That remedy is applicable in cases where a constitutional question is involved or the legality or meaning of a statute is in question and no question of fact is involved. In such cases, pure questions of law are presented. It would be difficult to imagine a case where that remedy would be more applicable."

Subdivision 1 of section 626 of the Real Property Tax Law provides in pertinent part as follows: "1. When a tax levied on a special franchise is due in any assessing unit, if the special franchise owner has paid such assessing unit for its exclusive use during the past year under any agreement or statute requiring the same, a sum based upon a percentage of gross earnings or other income, a license fee or other sum of money on account of such special franchise

possessed by such special franchise owner, which payment was in the nature of a tax, all amounts so paid * * * shall be deducted from the tax based on the assessment made by the state board for purposes of the assessing unit, but not otherwise, and the remainder shall be the tax on such special franchise payable for such purposes."

In *New York Rys. Co. v City of New York* (218 NY 483, 485-486) the Court of Appeals described the circumstances leading to the adoption of the predecessor section of section 626 of the Real Property Tax Law. An act to tax special franchises, which passed the Legislature at its regular session in 1899, had not been approved by Governor Theodore Roosevelt and an extraordinary session of the Legislature was called. In his message to the Legislature dated May 22, 1899, Governor Roosevelt wrote: " 'The bill before me fails to take account of the fact that, in a very unequal and irregular way, many corporations do already pay a certain, though usually an utterly inadequate, sum in taxes. Some pay nothing at all to the local municipalities; but others pay sums varying from one to five per cent on their gross earnings. The amounts have been determined in the most haphazard manner and bear no proportion whatever to the value of the franchises or to their earning capacity. It is obviously unjust, when introducing a system under which we believe that these franchises will for the first time be fully and fairly taxed according to their respective values, not to allow for this existing and inequitable taxation. Accordingly it should be provided that from the sum assessed by the State authorities as the tax which a corporation must pay because of its local franchise, there shall be deducted the amount already annually paid by it to the locality for such franchise.' " (218 NY, at pp 485-486.) Following this message section 46 of the Tax Law (now Real Property Tax Law, § 626) was enacted.

■ Preliminarily we agree with Teleprompter that the compensation provided in the franchise agreement is in the nature of "a tax" as that term is used in section 626 of the Real Property Tax Law, notwithstanding the fact that section 7(h) of the franchise contract states that the compensation was not to be so considered. (See *Heerwagen v*

*Crosstown St. Ry. Co. of Buffalo*, 179 NY 99; *Matter of New York & Queens Elec. Light & Power Co. v Delaney*, 229 NY 184.) The critical question remaining is whether or not the agreement of the parties in section 7(h) that the compensation "shall be in addition to any and all taxes which are now or hereafter required to be paid by any law of the State of New York, the City, or the United States" violates any public policy set forth in section 626 of the Real Property Tax Law. We hold that it does not and accordingly reverse the order and judgment entered at Special Term.

The precise issue was squarely addressed in *City of Ithaca v Ithaca St. Ry. Co.* (145 App Div 675) and the decision in that case remains the most authoritative statement of the governing rule.

A franchise had been granted the defendant to construct and maintain a double track railway upon some of the streets in the City of Ithaca. The agreement provided in substance that the railway company was to pay the city the sum of $500 per year for 50 years and a larger sum thereafter, " 'such payments to be chargeable against the earnings and assets of the Company operating the franchise as taxes are chargeable and to be in addition to all franchise or other taxes and assessments imposed by law.' " *(City of Ithaca v Ithaca St. Ry. Co., supra,* p 676.) In its opinion, the court clearly assumed that the company would be entitled to credit its payments under the agreement against payments under the special franchise law except for the language in the agreement quoted above. The court went on to hold (at p 677): "Where public policy does not prevent a party may waive the benefit of a statute and may assume obligations in addition or beyond the statutory obligations which would otherwise control * * * The terms contemplated by the franchise were that all franchise and other taxes must be paid and in addition thereto the sum mentioned * * * Any other construction is a violation of the intention of the parties and is an exemption of the defendant from an agreement which it has expressly made. The statute has reference to amounts paid under any agreement, that is, any amount paid for the use of the

franchise, and the object of the statute is to prevent double taxation, but there is no double taxation when the parties have agreed that in addition to all taxes a further sum must be paid."

The rule set forth in *City of Ithaca (supra)*, not challenged for some 65 years, seems to us clearly correct. Section 626 of the Real Property Tax Law explicitly recognizes the right of any locality to make separate arrangements for compensation in connection with the granting of franchises. Nothing in the section expressly or by implication limits the right of a locality to secure greater compensation than that set forth in the special franchise tax. This aspect of the statute, noted by the Court of Appeals in *Heerwagen v Crosstown St. Ry. Co. of Buffalo* (179 NY 99, 106, *supra*) and not disputed by Teleprompter, is dispositive of the issue presented. For if a locality may require compensation for the granting of a franchise in excess of that provided by the special franchise tax, it is difficult to perceive how the public policy of the State is offended if that greater remuneration is derived through a formula which fixes compensation in terms of an amount to be paid in addition to the franchise tax and other relevant taxes.

Whether section 7(h) of the franchise contract is viewed as a waiver by Teleprompter of the tax credit provision of section 626 of the Real Property Tax Law or simply as an agreement by both parties to a particular method for fixing the amount of compensation, we find in it no violation of section 626 of the Real Property Tax Law or of any public policy that might be thought to be implicit in the section.

The order of the Supreme Court, New York County (M. EVANS, J.), entered April 5, 1978 converting petitioner (hereafter plaintiff) Teleprompter's declaratory judgment action into one for mandamus pursuant to CPLR article 78, should be reversed on the law, insofar as appealed from, without costs, and the action should be reconverted to one for declaratory judgment.

The order and judgment of the Supreme Court, New York County (M. EVANS, J.), entered January 7, 1980, denying plaintiff's claim for a franchise tax credit from

August, 1970 to date, but granting such credit for the fiscal year ending June 30, 1978, should be reversed on the law to the extent appealed from by the City of New York, without costs, the partial tax credit should be vacated, and a declaration made that plaintiff is not entitled to any refund or credit of franchise fees paid, or to be paid, by it against amounts owed for its special franchise taxes.

MURPHY, P. J., BIRNS, ROSS and LYNCH, JJ., concur.

Order, Supreme Court, New York County, entered on April 5, 1978, unanimously reversed, on the law, without costs and without disbursements, and the action is reconverted to one for declaratory judgment. Order and judgment entered on January 7, 1980, unanimously reversed, on the law, to the extent appealed from by the City of New York, without costs and without disbursements, the partial tax credit vacated, and a declaration made that plaintiff is not entitled to any refund or credit of franchise fees paid, or to be paid, by it against amounts owed for its special franchise taxes.